842 F.2d 334
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry WATSY, Plaintiff-Appellant,
v.
Norman AMES, Sargent Schwade, William Farley, Defendants-Appellees.
 No. 87-1660.
 United States Court of Appeals, Sixth Circuit.
 March 24, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Larry Watsy, appeals from the district court's order granting the defendants'-prison officials' motion for summary judgment in this Sec. 1983 action. Watsy alleged that the manner in which the defendants teargassed him, deprived him of asthma medication, and conducted a strip search of him prior to his transfer to another prison, violated due process and the fourth and eighth amendments. For the reasons stated herein, we affirm.
 
 I.
 
 2
 Larry Watsy was a state prisoner in the custody of the State Prison for Southern Michigan (SPSM) until October 3, 1984, when he was transferred to the Marquette Branch Prison. Pursuant to prison policy, prisoners are strip searched[1] for contraband prior to a transfer. Apparently, Watsy and five other prisoners refused to leave their cells and submit to the strip search. Thereafter, prison officials administered tear gas and the prisoners exited their cells and submitted to the search.
 
 
 3
 The parties disagree about the facts. Watsy claims that he suffers from asthma and was on medication at the time of the incident. He also claims that he and the others were teargassed without warning, and excessively. He stated that he experienced temporary blinding, distorted breathing, burning, and vomiting spasms, and that he was not treated until five days after the incident occurred. He also claims that his asthma medication was confiscated and not returned to him, and that after he transferred to Marquette, his prescription was not reissued.
 
 
 4
 Prison officials Ames and Schiller stated in their affidavits that they warned the prisoners and only used the tear gas after attempts to talk the prisoners into coming out failed. Additionally, both officials stated that the prisoners were given towels soaked in baking soda after they came out of their cells, and that a medical assistant was present at all times. Additionally, Schiller stated that none of the prisoners requested medical attention.
 
 
 5
 Defendants N. Ames, L. Schwade, and B. Farley, SPSM prison officials, were named in Watsy's initial pro se Sec. 1983 complaint filed on November 4, 1984. His amended complaint filed on January 9, 1985, named two additional defendants--Pam Pearson and Warden Koehler, both prison officials at the Marquette Branch. All of the defendants were sued in their official capacity and individually. Watsy's case was consolidated with those of two other prisoners--Curtis Bragg and Elvis Wallace.[2]
 
 
 6
 The defendants filed a motion for summary judgment on March 3, 1987, which was referred to a magistrate. The affidavits of Norman Ames and Robert Schiller were attached to the motion. The magistrate's report recommending that summary judgment be granted in the defendants' favor was adopted by the district court.
 
 II.
 
 7
 Summary judgment is appropriate only if the moving party establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). If a motion for summary judgment is made and supported by evidentiary materials, as in this case, the opposing party may not simply "rest upon the mere allegations or denials of [that] party's pleadings, but [that] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 A.
 
 8
 Since the defendants' affidavits do not controvert Watsy's assertion that his medication was confiscated, the only issue with respect to that claim is whether given these facts, Watsy has stated a cognizable Sec. 1983 claim for deprivation of property without procedural due process. Watsy does not allege that this was done pursuant to established prison procedures or authorization. Therefore, this claim was properly dismissed pursuant to the doctrine of Parratt v. Taylor, 451 U.S. 527 (1981). A random and unauthorized deprivation of property does not provide the basis for a Sec. 1983 claim for procedural due process violation if adequate post-deprivational state remedies exist to redress the harm. Id. at 542-44. Watsy could have pursued a state tort claim for conversion.
 
 B.
 
 9
 The facts regarding Watsy's fourth amendment claim are likewise uncontroverted by the defendants. Watsy claims that subjecting him to a strip search incident to his transfer without reasonable cause to suspect that he is carrying contraband violates the fourth amendment. However, Watsy's claim must be evaluated in light of his status as a prison inmate.
 
 
 10
 In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court addressed "whether a prison inmate has a reasonable expectation of privacy in his prison cell entitling him to the protection of the Fourth Amendment against unreasonable searches and seizures." Id. at 519. The Court held that:
 
 
 11
 [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
 
 
 12
 Id. at 526.
 
 
 13
 However, Palmer dealt with the search of a cell as opposed to the search of an individual and therefore is not directly controlling. The constitutionality of strip searches of prisoners during which visual cavity inspections occurred was addressed in Bell v. Wolfish, 441 U.S. 520, 558-60 (1979). The prisoners in Wolfish were subjected to visual cavity searches after every contact visit with a person from outside the institution. Although the Court expressed its hesitancy, it found these searches to be reasonable "assuming for present purposes that inmates ... retain some Fourth Amendment rights upon commitment to a corrections facility." Id. at 558.
 
 
 14
 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
 
 
 15
 Id. at 559.
 
 
 16
 Here, the scope of intrusion is relatively high and the search, according to Watsy, was performed in the view of several other prisoners. However, the risk of contraband traveling from one prison to another is real, and presents a significant threat to prison security. Therefore, applying the balancing test set forth in Wolfish to these facts leads us to conclude that the strip search policy involved does not offend the fourth amendment.
 
 C.
 
 17
 Watsy's eighth amendment claim is founded on his assertion that the officials did not warn the prisoners that tear gas was going to be dispensed. A recent relevant case addressed a prisoner's claim based on a gunshot wound inflicted by prison guards attempting to quell a prison riot. Whitley v. Albers, 475 U.S. 312 (1986). Although the situation in this case is not factually identical, the manner in which the Court dealt with the eighth amendment claim based on the alleged use of excessive force provides the framework for evaluating other claims of a similar nature.
 
 
 18
 The Whitley Court explained that the "deliberate indifference" standard set forth in Estelle v. Gamble, 429 U.S. 97 (1976), was not appropriate for evaluating claims arising from situations involving competing interests. 475 U.S. at 320. Then the Court discussed the type of consideration to be given in such cases.
 
 
 19
 Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Johnson v. Glick, 481 F2d 1028, 1033 (CA2) (Friendly, J.), cert denied sub nom. John v. Johnson, 414 U.S. 1033 (1973). As the District Judge correctly perceived, "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," 481 F.2d at 1033, are relevant to that ultimate determination. See 546 F.Supp at 733. From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.... But equally relevant are such factors as the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.
 
 
 20
 Id. at 320-21.
 
 
 21
 When applying this standard we note the deference accorded to the decisions of prison administrators:
 
 
 22
 "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. at 567. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline.
 
 
 23
 Id. at 321-22.
 
 
 24
 Considering the facts alleged in light of the principles discussed above, we find that no material issue of genuine fact existed regarding Watsy's eighth amendment claim. We find that a reasonable jury could only conclude that the prison officials' use of tear gas in the situation they faced was a good faith effort to maintain prison discipline. Therefore, we agree with the district court's grant of summary judgment in the defendants' favor with respect to this claim.
 
 III.
 
 25
 For the above reasons, we AFFIRM the district court's order granting the defendants' motion for summary judgment with respect to all claims.
 
 
 
 [1]
 Michigan Department of Corrections Policy Directive DWA-30.05 describes a "strip search" as a "visual inspection of the body surfaces of a person who has been required to remove all or part of his/her clothing for the purposes of the search; includes visual inspection of the entrance to the vagina and the rectal cavity."
 
 
 [2]
 Bragg's case was dismissed after he escaped from prison, and Wallace's after he died. Although Watsy complains that his case should not have been consolidated with the others, this contention was mooted by the dismissals